## IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY MARYLAND

THOMAS ALSTON )
10012 Cedarhollow Lane )
Largo, MD 20774 )
)
    Plaintiff, )
)
v. )   CIVIL ACTION NO. CAL13-07161
)   **JURY TRIAL DEMANDED**
EQUIFAX INFORMATION )
SERVICES, LLC )
Serve: CSC-Lawyers Incorporating )
    Service Company )
    7 St. Paul Street, Suite 1660 )
    Baltimore, MD 21202 )
)
    Defendant. )

2013 APR 25 PM 4: 12

### COMPLAINT

COMES NOW the Plaintiff, Thomas Alston, (hereafter the "Plaintiff") and for his

complaint against the Defendant Equifax Information Services, Llc. ("Equifax") alleges as

follows:

### PRELIMINARY STATEMENT

1.    This is an action for actual, statutory and punitive damages, costs and attorney's

fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* and

the Miscellaneous Consumer Protection Provisions, Md. Code §14-1201 *et seq.*

### PARTIES

2.    The plaintiff is a natural person and resides in the State of Maryland. He is a

"consumer" as defined by the FCRA, 15 U.S.C. §1681a(c) and MCPP, Md. Code §14-1201(c).

3.    Upon information and belief, Equifax, is a corporation authorized to do business

in the State of Maryland.

Case: CAL13-7161
NEW CASE/PRO SE
CV CLERK FEE-    80.00
MD LEGAL SERV    55.00
TOTAL    135.00
Rcet PG01   Rcet # 54007
HMB  APH   Blk # 659
(at GR-A00)and   00:51 am
Case: CAL13-07161
NEW CASE/PRO SE
CV CLERK FEE-    80.00
MD LEGAL SERV    55.00
TOTAL    135.00
Rcet PG01   Rcet # 54006
HMB  APH   Blk # 655
Mar 12, 2013   00:48 am



4.      Upon information and belief, Equifax is a "consumer reporting agency," as defined in 15 U.S.C. §1681a(f) and a "person" within the meaning of the MCPP, Md. Code §14-1201(j). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

5.      Upon information and belief, Equifax disburses such consumer reports to third parties under contract for monetary compensation.

## FACTS

6.      Equifax is presently reporting or has reported in the past at least three different accounts—ASC mortgage account, HSBC credit card account and Cavalry collection account—that either did not exist or are/were inaccurate.

### *ASC Mortgage Account*

7.      Mr. Alston obtained a mortgage loan from BNC Mortgage for a residential property located in the District of Columbia.

8.      The servicing of the mortgage loan was transferred to ASC.

9.      The mortgage note required monthly payments that were timely made by Mr. Alston up and until the mortgage debt was satisfied.

10.     On November 8, 2004 Mr. Alston sold the property to a buyer, thereby satisfying the mortgage debt. A Grant Deed was filed in the DC Recorder of Deeds memorializing the sale.

11.     Mr. Alston obtained his Equifax, Experian and Transunion credit reports in September 2009 and learned that each credit bureau was erroneously reporting the mortgage account as a delinquent foreclosure.

12.    Thereafter, Mr. Alston disputed the erroneous mortgage account with each credit bureau for a period of two years before Experian and Transunion eventually stopped reporting the account in a negative manner.

13.    It was in July of 2011 that Mr. Alston initiated a dispute with each of the credit bureaus that lead to Transunion removing the account and Experian modifying the account to a positive status. While Transunion and Experian took correction action after fielding Mr. Alston's dispute, Equifax did not even bother to respond to Mr. Alston's dispute.

14.    In his July 2011 dispute Mr. Alston advised Equifax that he sold the property on November 8th 2004. Mr. Alston supplemented his dispute letter with a copy of the Grant Deed and Certificate of Satisfaction, both of which contradicted Equifax's reporting of the delinquent mortgage account.  The Grant Deed specifically stated that the "AMOUNT OF ANY MORTGAGE OR DEED OF TRUST OUTSTANDING" was paid in the sale. Mr. Alston requested that Equifax delete the account from his credit report.

15.    Mr. Alston submitted materially identical disputes to all three credit bureaus. As noted above both Experian and Transunion modified and deleted the account, respectively. Only Equifax refused to respond to the dispute, let alone perform an investigation of the account.

16.    In October of 2011 Mr. Alston initiated another dispute of the delinquent mortgage account with Equifax. Enclosed with this dispute letter was the July 2011 dispute that Equifax never responded to.

17.    On November 16, 2011 Equifax responded to Mr. Alston's dispute by verifying the mortgage account as accurate rather than taking the corrective action of deleting or modifying the erroneous account.

3

18.     Equifax's reporting of the delinquent mortgage account was false. Mr. Alston made each and every monthly mortgage payment and at no time did he ever become delinquent in his payments.

19.     Equifax had knowledge that  the mortgage debt was current up and till the time the debt was satisfied via a sale on November 8, 2004.

20.     Equifax had actual knowledge that the delinquent mortgage account was inaccurate and deliberately chose to ignore that fact and continued to permit the reporting of the inaccurate account. Equifax willfully violated Mr. Alston's rights under the FCRA by refusing to correct or delete the account.

21.     Mr. Alston struggled with his credit during the time period related to the dispute in this action. Based upon information and belief, Equifax provided inaccurate credit reports containing the delinquent mortgage account to several creditors and/or users of Mr. Alston's credit report.

### HSBC Credit Card Account

22.     Mr. Alston obtained his Equifax, Experian and Transunion credit reports in March 2011 and learned that each credit bureau was erroneously reporting a delinquent HSBC credit card account. Specifically, the credit bureaus were reporting the credit card account as:

a.      Opened in 07/2010;

b.      Having a balance of $420;

c.      Having a credit limit of $300;

d.      Being late 91-120 days; and

e.      Becoming delinquent on 11/2010.

4

23. This reporting was false because Mr. Alston did not open a credit card account in 2010, let alone make purchases using a credit card in 2010.

24. Thereafter, Mr. Alston earnestly disputed the account via the three credit reporting agencies on numerous occasions.

25. For nearly 15 months each of the credit reporting agencies verified the erroneous HSBC credit card account as accurate in response to Mr. Alston's disputes.

26. Eventually Experian and Transunion deleted the erroneous HSBC account.

27. Although both Experian and Transunion deleted the HSBC account, Equifax refused to delete the account and ostensibly continued to report the delinquent credit card account.

28. In his dispute Mr. Alston explained that he did have an account with HSBC and even attached an affidavit attesting to such fact. This was enough for Experian and Transunion to remove the account from their respective reports. On the other hand, Equifax refused to consider Mr. Alston's dispute and just continued to parrot HSBC's side of the story without performing any sort of an independent investigation.

29. Equifax essentially admitted to such in a telephone call between Mr. Alston and an Equifax representatives. On August 8, 2011, Mr. Alston spoke with Chloey Manzanon from Equifax's dispute department. Chloey Manzanon advised Mr. Alston that Equifax's dispute verification process merely consisted of HSBC verifying the consumer's name, address, account number and social security number.

30. Upon information and belief Equifax has policies and procedures that prevent its employees from performing an investigation of a consumer's dispute and Equifax relies totally on the representations of the creditor.

31.     It should also be noted that Equifax was also reporting another HSBC credit card account that was purported opened in July 2010. Mr. Alston was successful in his attempts to get Equifax to delete the duplicate account but was unsuccessful in getting the description in which Equifax employed in determining the account should be deleted. Mr. Alston sought this information for he believed it may provide insightful on how he could go about getting the other erroneous account removed. But Equifax never provided a description of its investigation despite Mr. Alston's requests for such information.

32.     Equifax had actual knowledge that the HSBC account was inaccurate and deliberately chose to ignore and permit reporting of the inaccurate account.

33.     Mr. Alston struggled with his credit during the time period related to the disputes in this action. Based upon information and belief, Equifax provided inaccurate credit reports containing the delinquent credit card account to several creditors and/or users of Mr. Alston's credit report.

34.     Equifax is still reporting the erroneous HSBC account and thus preventing Mr. Alston from obtaining credit.

### Cavalry Collection Account

35.     Cavalry Portfolio Services, LLP ("Cavalry") claimed to have purchased the HSBC account and in August 2011 Cavalry began reporting the account as a collection account to each of the three credit bureaus.

36.     Upon learning that Cavalry was reporting a collection account to his credit reports, Mr. Alston initiated disputes with each credit bureau.

37.     Equifax verified the collection account as belonging to Mr. Alston. Equifax verified this account without performing an investigation of the account. Rather than

6

investigate Mr. Alston's dispute, Equifax simply relied upon Cavalry's representations of the accuracy of the account.

38.     Equifax only ceased to report the account after Mr. Alston brought an action against Cavalry and Cavalry instructed Equifax to remove the account from Mr. Alston's credit report.

39.     Equifax's actions were done willfully or in reckless disregard of Mr. Alston's rights under the FCRA.

40.     Mr. Alston struggled with his credit during the time period related to the dispute in this action. Based upon information and belief, Equifax provided inaccurate credit reports containing the erroneous collection account to several creditors and/or users of Mr. Alston's credit report.

## COUNT ONE: VIOLATION OF FCRA

41.     Plaintiff realleges and incorporates paragraphs 1 through 40 above as if fully set out herein.

42.     Equifax violated 15 U.S.C. §1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the Plaintiff's credit reports and credit files it published and maintained concerning the Plaintiff.

43.     Equifax violated 15 U.S.C. §1681i(a)(1) on multiple occasions by failing to conduct a reasonable investigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the item from the Plaintiff's credit files.

7

44.     Equifax violated 15 U.S.C. §1681i(a)(2) on multiple occasions by failing to provide ASC, HSBC and Cavalry with all the relevant information regarding the Plaintiff's disputes.

45.     Equifax violated 15 U.S.C. §1681i(a)(4) on multiple occasions by failing to review and consider all relevant information submitted by the Plaintiff.

46.     Equifax violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the items of information upon a lawful reinvestigation.

47.     Equifax violated 15 U.S.C. §1681i(a)(7) by failing to provide a description of the reinvestigation within 15 days of receiving Plaintiff's requests for such descriptions.

48.     As a result of Equifax's foregoing violations of 15 U.S.C. §§1681e(b), i(a)(1),(2),(4),(5)(A)&(7), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

49.     The violations by Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. Punitive damages are required to change Equifax's reckless disregard for the rights of consumers to obtain accuracy in their credit reports and remove erroneous data. In the alternative, Equifax was negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

50.     Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT TWO: VIOLATIONS OF MCPP

51.     Plaintiff realleges and incorporates paragraphs 1 through 50 above as if fully set out herein.

52.     Defendant Equifax violated Md. Code §14-1208(b) by failing to conduct reasonable reinvestigations and failing to delete the inaccurate accounts. Defendant also violated §14-1208(a) by failing to respond within seven (7) days upon receiving Plaintiff's disputes.

53.     As a result of conduct, actions and inactions of Equifax, the Plaintiff suffered actual damages including without limitation, by example only and as described herein by Plaintiff: out-of-pocket expenses, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

54.     Equifax's conduct, actions and inactions were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to Md. Code §14-1213(a). In the alternative, Equifax was negligent, entitling the Plaintiff to recover under Md. Code §14-1213(b).

55.     The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from Equifax in an amount to be determined by the Court pursuant to Md. Code §14-1213(a) and §14-1213(b).

WHEREFORE, your Plaintiff demands judgment for actual, statutory and punitive damages against Equifax; for his attorneys' fees and costs; for prejudgment and post-judgment interest at the legal rate, and such other relief as the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

**THOMAS ALSTON**

By _____

Thomas Alston
10012 Cedarhollow Ln
Largo, MD 20774
(301) 350-5780
*Pro Se Plaintiff*